IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Sarah Smith, | ) | Civil Action No.   8:14-cv-00370-BHH-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On January 8, 2008, Plaintiff filed applications for DIB and SSI alleging disability beginning January 23, 2007.   [R. 394–409.]  Plaintiff's claims were denied initially and

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

upon reconsideration by the Social Security Administration ("the Administration"). [R. 288–92, 294–99.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 5, 2009; June 17, 2011 (*after Appeals Council remand*); and July 17, 2012 (*supplemental hearing*), ALJ Gregory M. Wilson conducted de novo hearings on Plaintiff's claims. [R. 185–287.] Plaintiff also filed subsequent applications for DIB and SSI on February 24, 2010 that were associated with Plaintiff's original claims remanded by the Appeals Council. [R. 448–464]

Subsequent to these hearings, the ALJ issued a decision on August 30, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 33–64.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2013, and she had engaged in substantial gainful activity from the alleged onset date of January 23, 2007 until January 2008. [R. 36, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff has severe impairments of: degenerative disc disease, degenerative joint disease, coronary artery disease, diabetes mellitus, obesity, and sleep apnea. [R. 37, Finding 3.] The ALJ also found Plaintiff has numerous non-severe impairments which no more than minimally affected her work activities, including: gastroesophageal reflux disease, urinary tract infections, hypertension, anemia, dyslipidemia, gout, nasal congestion and cough, knee pain, depression, and anxiety. [R. 37–38.] The ALJ concluded that Plaintiff's abdominal discomfort did not represent a medically determinable impairment. [R. 38.]

At Step 3, the ALJ determined Plaintiff did not have an impairment or combination

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 47, Finding 4.]  Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the RFC to lift/carry a maximum of 10 pounds frequently and 20 pounds occasionally, to walk for a maximum total of two hours in a workday, stand for a maximum total of two hours and sit for six of eight hours.  She has the following additional postural, environmental and manipulative limitations: never climb ladders/ropes/scaffolds, occasionally perform all other postural activities, frequently handle, finger and feel, and avoid concentrated exposure to temperature extremes and hazards (machinery, heights, etc.).

[R. 53, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as a nursing assistant.  [R. 63, Finding 6.]  Considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ determined that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 63, Finding 10.]  Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act, from January 23, 2007, through the date of the decision.  [R. 64, Finding 11.]  Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–6.]  Plaintiff filed this action for judicial review on February 10, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by failing to properly weigh the opinions of Dr. Alfred G. Jonas ("Dr. Jonas"), the medical expert who testified at the hearing, Dr. Carol Kooistra ("Dr. Kooistra"),

and Dr. Gowdhami Mohan ("Dr. Mohan").   [Doc. 17 at 26–37.]  Plaintiff further contends

the Appeals Council erred by failing to properly consider new evidence affecting the ALJ's

decision. [*Id*. at 37–38.]

The Commissioner, on the other hand, contends the ALJ's weighing of the medical

opinions of Drs. Jonas, Kooistra, and Mohan is supported by substantial evidence [Doc.

19 at  21–32], and that Plaintiff failed to show that treatment records from Dr. Moran

submitted to the Appeals Council were both new and material.  [*id*. at 32–35.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the

evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning

mind would accept as sufficient to support a particular conclusion.  It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is

'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a

claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.   *See id.* §§ 404.1521, 416.921.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).   The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.   *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.  *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.  *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

---

is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

support or contradict the opinion, 20 C.F.R. §§ 404.1527©, 416.927©.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

14

to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a

consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the

regulations, however, the ALJ may determine that a consultative examination or other

medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if

16

> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of

pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight to Medical Opinions**

Plaintiff argues the ALJ improperly rejected Dr. Jonas's opinion that Plaintiff would possibly be sleepy during the day, have fatigue, and have a functionally impairing diagnosis of sleep apnea. [Doc. 17 at 27.] Plaintiff also contends Dr. Jonas's opinion was consistent with the opinions of Dr. Mohan and Dr. Clifton Straughn and that fact that Dr. Jonas did not have updated records did not detract from his opinion. [*Id.* at 27–28.] Further, Plaintiff asserts neither Dr. Stuart Barnes ("Dr. Barnes") nor Dr. Robin L. Moody ("Dr. Moody") addressed Plaintiff's sleep apnea. [*Id*.] Additionally, Plaintiff argues the ALJ improperly rejected Dr. Mohan's opinion that it would be most "probable that [Plaintiff] would fall asleep several times during any 8-hour period." [*Id.* at 35.] The Court agrees that the ALJ failed to properly explain his basis for assigning less weight to the opinions of Dr. Jonas and Dr. Mohan.

### *Discussion*

The applicable law in this Circuit holds that "[t]he ALJ is not required in all cases to give a treating physician's opinion greater weight than other evidence. If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p, 1996 WL 347188, at * 1; *see also* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical

and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig*, 76 F.3d at 590. The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter*, 993 F.2d at 35 (citation omitted). Rather, a treating physician's opinion is evaluated and weighed pursuant to the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927, taking into consideration any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(6) and 416.927(c)(6). Additionally,

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*., at * 5. The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Ultimately, it is the responsibility

19

of the Commissioner, not the courts, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). However, a court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

### *Dr. Jonas*

Dr. Jonas testified via telephone at Plaintiff's October 5, 2009 hearing as a medical expert in psychiatry. [R. 232–33.] He indicated he had reviewed Plaintiff's file through Exhibit 47F, dated June 3, 2011. [*Id*.] Dr. Jonas concluded from his review of the record that Plaintiff had three significant non-psychiatric problems—back disease, cardiac problems, and morbid obesity—all limiting her to sedentary exertion, and that psychiatrically, he did not think Plaintiff had any diagnosable condition and that Plaintiff's complaints of fatigue and depression were relatively minor emotional reactions, which is non-psychiatric. [R. 236–37.] He explained that it was not clear whether the cardiac condition caused the fatigue or whether the combination of back pain, obesity, and sleep apnea caused some degree of fatigue. [R. 237–38.] He testified that, with the exception of a few medical conditions, it is almost impossible to predict what an exertional limitation would be simply based on a diagnosis whether it's a psychiatric diagnosis or a physical diagnosis. [R. 238.] Dr. Jonas opined that the fact that Plaintiff worked into January of 2008 says more about her capacity than the fact that she has certain diagnoses. [*Id*.]

With respect to the effect of Plaintiff's sleep apnea on her fatigue complaints, Dr. Jonas testified that:

> Well, again not categorically, simply from knowing that she has
> the diagnosis, but I can tell you that if somebody has, let's say
> significant obesity  and sleep apnea and if it turns out they,
> they routinely get a poor night's sleep, then it is possible that
> they will be sleeping during the day, that they will experience
> fatigue and that it will be functionally impairing.  Now, I, I guess
> I should have asked her, but I don't know, in view of the
> diagnosis of obstructive sleep apnea, whether she is being
> treated with CPAP or anything else like that and if she is, how
> effective is that in relieving her symptoms and restoring her
> nighttime sleep.  And if she's not being treated, then why is
> she not being treated.

[R. 238–39.]   The ALJ then asked Plaintiff if she was using a continuous positive airway

pressure **("CPAP")** machine to which she responded that she was not because she could

not get the testing done when it was required.  [R. 239.]  Plaintiff's counsel explained that

Plaintiff had a "poor man's sleep study" or an oximetry performed because should not

afford the deductible for the sleep study; and that the oximetry showed a lot of

desaturations.  [R. 240.]  Dr. Jonas then opined that, if Plaintiff has considerable sleep

apnea and is having a number of desaturations at night, then it is possible that she will

have daytime sleepiness.  [R. 241.]  He concluded, however, that it was not entirely clear

from the record before him that Plaintiff could not be functional or even fully functional with

her degree of sleep apnea. [*Id*.]

The ALJ summarized Dr. Jonas' testimony at Plaintiff's June 2011 hearing follows:

> The ME, Dr. Jonas, testified in June 2011 that claimant's
> significant non-psychiatric impairments were back disease,
> cardiac disease and morbid obesity. He said it was reasonable
> that these might combine to limit her to sedentary exertion, but
> he noted that she worked for a year after the alleged onset
> date at a job that was clearly not sedentary exertion and this
> was at the same time that she had these findings that possibly
> limited her to sedentary exertion.

As to psychiatric impairments, Dr. Jonas said she had no diagnosable condition, with nothing from the record that had any meaning. He described her fatigue and depression as relatively minor reactions to other material. Dr. Jonas did not feel that she met or equaled a listing and said she had no anxiety, depression or mental illness. He noted a diagnosis of depression in the record at Exhibit 32F, page 1, but looking at the overall record, he did not see an independent diagnosis of depression and saw only some elements of depression. He said she did not have a diagnosis under section 12.04.

As to fatigue, he said it was hard to tell if it was persistent throughout her life and it was not clear that her cardiac condition caused fatigue. When she was in a flare, that might cause a number of problems, but it was entirely possible that treatment with stents had relieved all symptoms.

He said back pain, obesity and sleep apnea all might cause fatigue, but all these conditions, including fatigue, existed when she was working as a nursing assistant. He said that with the exception  of a very few medical conditions, it was almost impossible to predict the level of exertional impairment on the basis of a diagnosis, whether the impairment was physical or psychiatric.

He said the fact that she worked into January 2008 said more about her capacity than her diagnosis. She stopped working in January 2008 when she had re-stenting and she had placement of another stent a year later. From January 2008 on, except for a flare, it was not clear to him what her exertional limitation would have been.

Dr. Jonas noted mention in the record of sleep apnea. As to its effects on fatigue, he said that if someone had significant obesity and sleep apnea and routinely got a poor night's sleep, the person would possibly be sleepy during the day, have fatigue, and have a functionally impairing diagnosis of sleep apnea.  He said that if she had considerable sleep apnea and was having a number of desaturations at night, she could possibly have the daytime sleepiness predicted by Dr. Mohan.

[R. 49.]

The ALJ reasoned that Dr. Jonas's June 2011 opinion testimony was not entitled to "as much weight as if he had reviewed the entire record" because Dr. Jonas did not have access the results of consultative examinations by Dr. Barnes and Dr. Moody, updated records from Dr. Mohan, and updates from the Anderson Free Clinic. [R. 50.] Although not clearly stated, it appears the ALJ discounted Dr. Jonas's testimony because he determined it contradicted or was undermined by the later medical evidence provided by Dr. Barnes, Dr. Moody, Dr. Mohan, and the Anderson Free Clinic. However, upon review the Court finds that Dr. Jonas's opinions are not inconsistent with the findings in the later examinations and evidence. On June 8, 2010, afer reviewing her medical records, Dr. Barnes performed a comprehensive medical examination of Plaintiff. [R. 1064.] On both physical and neurological exam, Dr. Barnes noted generally normal findings. [R. 1066.] Dr. Barnes found that Plaintiff would be unable to perform tasks requiring much bending, stooping, or mobility [*id*.]; however, he made no mention of sleep apnea. Dr. Moody conducted a consultative examination of Plaintiff on October 8, 2010. [R. 1079.] While Dr. Moody found Plaintiff's concentration was distracted [R. 1080], she did not consider or address the affect of Plaintiff's sleep apnea on her ability to function.

Dr. Mohan saw Plaintiff on December 10, 2012 on a follow-up after bypass surgery related to her coronary artery disease. [R. 15.] Dr. Mohan noted that with respect to her obstructive sleep apnea Plaintiff experienced excessive daytime sleepiness, apnea during sleep and gasping, snoring and frequent nocturnal awakenings but no nocturnal seizures, episodes of sleep walking or talking, restless legs, unrefreshing sleep, sleepiness when sedentary, impaired concentration, memory problems, and irritability. [*Id*.] He further noted Plaintiff's physical exam was generally normal with the exception of a narrowed oropharynx

23

and that Plaintiff was currently on a CPAP machine. [R. 17–18.] The most recent medical records from the Anderson Free Clinic that predate the ALJ's decision indicated that on April 20, 2012 Plaintiff presented to Dr. Mohan with complaints of snoring, excessive daytime sleepiness, and frequent nocturnal awakenings. [R. 1198.]

Upon review of the ALJ's decision, it appears the later medical evidence is consistent with Dr. Jonas's finding that, if Plaintiff is suffering from severe sleep apnea, she may also struggle with daytime sleepiness. After reviewing the later evidence cited by the ALJ, the Court is left to guess at the basis for the ALJ's decision to discount Dr. Jonas's expert testimony. The ALJ erred, as a matter of law, by failing to sufficiently articulate his reason(s) for discounting Dr. Jonas's opinions. Accordingly, the Court cannot find his weighing of Dr. Jonas's opinion to be supported by substantial evidence.

### Dr. Mohan

The ALJ noted that Plaintiff saw Dr. Mohan on July 13, 2011 for sleep complaints. [R. 47.] The ALJ summarized Dr. Mohan's opinion as follows:

> Dr. Mohan reported on July 15, 2011 that before treatment with CPAP, if Ms. Smith engaged in work in which she was seated for six of eight hours, it was most probable that she would fall asleep several times during any eight-hour period. He admitted that treatment with CPAP would resolve such a problem. He said it was possible that Ms. Smith suffered from such problems (Exhibit 50F).

> In August 2011, Dr. Mohan, elaborated on the limitations he had described on July 15, 2011. He first treated Ms. Smith in 2007 for findings consistent with sleep apnea. He said the 20 to sleep study suggested that she suffered from severe sleep apnea since at least that time. Based on his 2007 initial exam and subsequent sleep studies, he said it was most probable that she had suffered from sleep apnea since at least 2007.

He said it was not uncommon for patients with sleep apnea to tend to fall asleep in a seated position. It was most probable that a person with untreated sleep apnea would tend to fall asleep while in a seated position due to excessive daytime somnolence. At the very least, it was difficult for a person with excessive daytime somnolence to concentrate. For this reason, a person with untreated sleep apnea would tend to experience interruptions to concentration sufficient to interrupt tasks frequently throughout the workday.

He said it was most probable that Ms. Smith had sleep apnea that would have caused her to tend to fall asleep while in a seated position and would have caused her difficulty with concentration as described above since at least 2007. He said he could not attest to any ongoing limitations. He admitted that usually, treatment with CPAP was effective for resolving symptoms of sleep apnea (Exhibit 51F).

[R. 60.]

The ALJ reasoned that Dr. Mohan was a treating source under SSR 96-2p, but that he could not assign controlling weight to his opinions of July and August 2011 because they predated both Dr. Mohan's prescription for the CPAP and Plaintiff's follow-up after she started using CPAP. [*Id.*] The ALJ explained that Dr. Mohan's earlier opinions do not reflect the findings of his August 2011 exam after Plaintiff started using CPAP when she said she tolerated the treatment well. [*Id.*] Further, the ALJ noted that there are no records of follow-up visits to document Plaintiff's progress with using the CPAP and she had not complained of sleep apnea to later examining sources. [*Id.*]

When an ALJ chooses to assign less than controlling weight to a treating physician's opinion, the ALJ must "rationally articulate the grounds for [his] decision." *Steel v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Here, the ALJ did not give controlling weight, or indicate an assigned weight for that matter, to Dr. Mohan's opinions because his opinions did not reflect findings after Plaintiff started using the CPAP machine and there were no records

25

of follow-up visits.  However, a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Zarkowski v. Barnhart*, 417 F.Supp.2d 758, 765 (D.S.C. 2006) ("[E]ven where the treating physician's opinion is not entitled to 'controlling weight' because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected.").  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR §§ 404.1527 and 416.927. [*Id.*]  Further, the record does not contain any particularized inquiry or discussion concerning the affect of  Plaintiff's use of the CPAP on her daytime drowsiness.  The Court cannot assume, as the ALJ has, that subsequent findings contradict Dr. Mohan's opinions and, thus, rendered them unsupported by the record.  Accordingly, the Court finds the ALJ's reasons for rejecting  the opinions expressed by Dr. Mohan do not rise to the level of "good reasons" and are plainly contrary to the Treating Physician Rule. *See* SSR 96-2P, 1996 WL 374188, at * 5 ("[T]he adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s) . . . .").

Based on the above, the Court finds the ALJ's weighing of both Dr. Jonas's and Dr. Mohan's opinions are not supported by substantial evidence and requires remand so that the ALJ can rationally articulate his weighing of these medical opinions.

**Additional Allegations of Error**

Because the Court finds the ALJ's failure to properly weigh the opinions of Dr. Jonas and Dr. Mohan is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including whether the ALJ erred in his evaluation of Dr. Kooistra's medical opinions, whether Plaintiff was disabled during a possible closed period between 2007 and 2011, and whether new evidence ought to be considered.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

S/Jacquelyn D. Austin
United States Magistrate Judge

May 4, 2015
Greenville, South Carolina

27